**TRUVAL SHIRT COMPANY, Inc., a New York corporation, Plaintiff,**

v.

**TARGET STORES, INC., a Minnesota corporation, Defendant.**

**No. 4–65–Civ–279.**

United States District Court
D. Minnesota,
Fourth Division.

Oct. 12, 1966.

Curtis L. Roy and John J. Held, Jr., Minneapolis, Minn., for plaintiff.

John D. Gould and Paul A. Welter, Minneapolis, Minn., for defendant.

MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this trademark infringement and unfair competition action brought by a New York-based men's shirt manufacturer against a discount store chain headquartered in Minneapolis, Minnesota, the principal issue is whether the mark, Tarval, is a colorable imitation of the mark, Truval, as each is used on shirts and other articles of wear.

The plaintiff registered its trademark, Truval, in 1958. It had previously registered similar variations of the word. Since 1950 plaintiff has spent substantial sums of money in advertising Truval dress and sports shirts. In recent years it has advertised nationally in consumer magazines such as Playboy and Esquire, and locally in newspapers in the smaller communities of Minnesota. Plaintiff shipped $257,944.00 worth of its merchandise into Minnesota in 1965 and lesser amounts in previous years. The evidence showed that the plaintiff's business in the Minnesota area has enjoyed a marked and steady increase from 1956 to the present.

The defendant was incorporated in 1961 and is a wholly-owned subsidiary of Daytons, a well-known Minnesota department store organization. It now operates six discount stores—3 in the Twin Cities, Minnesota area, 1 in Duluth, Minnesota, and 2 in Denver, Colorado. Its long-range plans call for it to open 38 more stores in the next ten years, probably in the Midwest area. Since 1962 it has been marketing men's dress and sports shirts, boys shirts, diapers, and other articles of wear under the Tarval label.

Plaintiff's claim is that Tarval is a colorable imitation of Truval and seeks, under the Lanham Act, 15 U.S.C.A. § 1051 et seq., and, on the theory of unfair competition, to enjoin defendant from the use of the Tarval mark and to recover damages.

The term "colorable imitation" as used in the Lanham Act is defined as including,

" * * * any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive * * * " 15 U.S.C.A. § 1127

Thus we have a fact issue as to whether, under the evidence presented in this three-day trial to the court starting on July 26, 1966, the plaintiff has proved that Tarval is a colorable imitation of Truval.

The decided cases are not of much practical assistance in framing the legal background for the decision since each case must rest largely on its own facts. But the cases indicate, and counsel agree, that the key test is whether the use of the allegedly infringing mark occasions a likelihood of confusion.

Several factors may properly be considered in determining this. One of them is the practice of good faith. Here it is not disputed that the defendant did not act in bad faith. It is not claimed that the defendant intentionally set out to imitate the trademark, Truval, by the use of Tarval. The mark, Tarval, was apparently chosen following a contest sponsored by the Target Stores when seeking a suitable house brand name for the distribution of some of their merchandise and is, as obviously appears, a combination of the words "Target" and "value." The officers of defendant were not aware that the plaintiff was marketing shirts under the name, Truval, at the time defendant started the use of the mark, Tarval.

Defendant did cause its trademark attorneys to make a pertinent search in the patent office in Washington, and while this search did disclose registration of several variations of the term Truval, such as TRU-VAL, it did not, for some unexplained reason, reflect plaintiff's registration in 1958 of the mark "Truval." At all events, the evidence did not show that there was any bad faith or intention to impinge upon plaintiff's trademark.

Plaintiff's most impressive argument is that there is a definite similarity in the two marks. There is no question but that a flash look at each of the marks as they are shown in the magazine and newspaper advertising as is illustrated by Plaintiff's Exhibit 5, reflects a marked similarity in the marks Truval and Tarval—especially since those words are printed in the same kind of type, to wit, ultra-Bodoni-italic. The same kind of type, however, is not used by defendant in the markings on the packages. The markings on the wrappings of the shirts are decidedly different. The Tarval mark consists of the word "Tarval" enclosed in a descriptive border on top of which is a large "T" with a circle around it representing Target, and under which is the clause "a fine quality Target product" so that a reasonably close examination of the packaging of the Tarval merchandise would accurately reflect the product encased there and would not be likely to cause confusion with the differently marked packaging of the shirts merchandised by the plaintiff.

Another factor to be considered is, in the terminology of the trademark lawyer, the strength or weakness of the mark which has been registered. It is urged by the defendant here that the trademark Truval is a relatively "weak" mark in that it is descriptive of the words "true" and "value" and hence the court should manifest a less degree of concern for protecting it than it should in the case of a stronger type of mark such as one that is suggestive of the product as in the case of "Champion" spark plugs or for a coined expression such as in the case of "Kodak" cameras. Here it appears that the defendant is on sound ground in urging that since Truval is obviously a combination of "true" and "value" and Tarval is obviously a combination of the words "Target" and "value" the trademark Truval might properly be categorized as descriptive and hence "weak" in the lexicon of trademark law. It was shown that other shirts and other types of wear articles were marketed under similar names such as "Morval" and "Serval."

An additional factor to be considered in determining the likelihood of con-

fusion is the method by which the competing goods are merchandised. The plaintiff's goods are sold by its regionally located salesmen to independent merchants who in turn sell them to the public served by clerks in their respective stores. The defendant's merchandise is sold essentially on a self-service basis at its several discount stores. The purchaser of the Tarval shirt must normally appraise the merchandise on his own through an examination of it and of the descriptive material contained on it and on its packaging. The court is impressed that there is little likelihood of confusion by a discount store shopper thus obligated to make his own examination and appraisal of the merchandise.

There was considerable testimony at trial that there might be some confusion in the color of the packaging of the Tarval shirts as compared to the Truval shirts. Many of the shirts of each are encased in black and gold wrappings, but the testimony was abundant that many types of shirts of many other brands are similarly wrapped in gold and black wrappings.

There was some testimony as to actual confusion between the respective shirts of plaintiff and defendant. Morris Greenberg, long-time Minneapolis men's clothier, told of three customers—one woman and two men—who may have been confused because of the alleged similarity of the names Truval and Tarval. This testimony, while credible, was not impressive in supporting a case for a likelihood of confusion.

The defendant sought to show that, while the plaintiff may have expended considerable money in advertising of Truval shirts, it did not result in a marked impression upon the public in the Twin Cities, Minnesota, area where the confusion is alleged to exist. The defendant caused a scientific public opinion survey to be made, the result of which was the expressed conclusion that:

> "The level of awareness of Truval shirts is very low in the Twin Cities Metropolitan area. Only 1% of the adult heads of household associate the name Truval with shirts, only 3% associated the printed name 'Truval' with shirts or clothing, and only 3% say they or their husbands have a Truval shirt." Defendant's Exhibit M.

From all of the evidence presented, the court concludes that the use by defendant of the Tarval label has not been shown to be likely to cause confusion or mistake or to deceive, and hence is not a "colorable imitation" of the plaintiff's trademark, Truval.

The court is likewise satisfied that the plaintiff has not made out a case for unfair competition.

Consistent with these expressions, the court has signed findings of fact, conclusions of law and order for judgment for the defendant and has caused the same to be filed.